## Reiff's Estate

*J. Wilmer Fisher* and *Richard T. Williamson,* for accountant.

*Robert G. Bushong* and *M. B. Hoffman,* for exceptant.

*John W. Biehl,* guardian and trustee ad litem.

MARX, P. J., February 27, 1943.—The question raised on this record involves the right of the trustee, the accountant, to reimbursement out of the estate for premiums paid for public liability insurance.

Guy B. Reiff, life beneficiary under the trust, excepted to seven items of credit taken in the account against real estate income from seven properties for premiums paid on public liability insurance policies. In the adjudication of May 16, 1942, it was found (p. 5):

"The insurance questioned was against 'public liability'. The credit items specify 'O. L. T.' insurance. We have no further indication of the scope or coverage of the policy. The insurance may be to the protection of the estate or it may be to the protection of the fiduciary. Whether the estate is liable for the premiums paid rests in the determination of the protection given."

It was decreed (p. 7):

"To the end that the parties may be given an opportunity to further proceed in the matter, we will dismiss the sixth exception, without prejudice to the right of the exceptant to seek a further audit thereon."

Confirmation absolute of the adjudication was stayed. Thereafter, by consent of all parties in interest, a copy of the uniform policy was placed in evidence and the question submitted for further consideration and adjudication. On August 15, 1942, a supplementary adjudication was confirmed nisi. We quote the following findings contained therein:

"The policy was issued January 17, 1941, for a term of three years, to Berks County Trust Company and/or Colonial-Berks Real Estate Company, as 'Owner,

Agent, Trustee, Administrator or Executor,' and applies, inter alia, to premises 716 North 9th Street, Reading. By indorsement the 'Name of Insured, is extended to include Co-Administrators, Co-Executors, Co-Trustees and the Beneficiary or Beneficiaries of Trust Estates; Owners or Co-Owners of properties; and Agents of the Berks County Trust Company and/or Colonial-Berks Real Estate Company,' and 'any executive officer of the Berks County Trust Company and/or Colonial-Berks Real Estate Company'."

"The insurer agrees (1) 'To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined' and (2) 'To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined'.

"The hazards against which the policy protects are:

"1. Operations: 'The ownership, maintenance or use, for the purposes stated in the declarations, of the premises, and all operations during the policy period which are necessary or incidental to such purposes.'

"2. Elevators: 'The ownership, maintenance or use, for the purposes stated in the declarations, of any elevator therein designated'."

The auditing judge found (p. 3):

"It is apparent that the protection of the policy is accorded the estate and the property of the estate, on the one hand, and the fiduciary on the other. It indemnifies the owner and the trustee and administrator . . . we deduce the rule that a fiduciary is responsible

for his own torts and those of his officers, representatives and agents, in the administration of his trust. He may not cover his acts as fiduciary by insurance placed at the expense of the estate. His torts and those of his aforesaid representatives are and remain his own, and responsibility for them rests upon him, not upon the estate in his care. The cost of insurance against his torts may not be drawn from the assets of the estate.

"We further deduce that there are certain hazards incident to the estate itself, accidents not attributable to the fiduciary, and responsibility for which cannot be laid or charged to him. To protect the estate against such hazards it is proper and permitted for the fiduciary to cover by insurance.

"The insured under this policy are the owner, the trustee, the administrator and any and all executive officers identified with or responsible to the accountant. The hazards against which the insurance protects are hazards which may be attributable to the estate itself, natural wear, tear, and deterioration, and such as cannot be readily detected, on the one hand, and the torts of the fiduciary and his representatives, on the other hand. The policy covers both classes of hazards and affords both classes of the insured protection. From the authorities cited in our adjudication we conclude that each of the interested parties, the owner on the one hand and the fiduciary on the other, may and should cover by insurance, and must each carry his respective burden thereof. The exception here taken charges improper credits in the payment of seven premiums of insurance of $4.50 each, in the purchase and continuance of insurance as here outlined. The accountant is entitled to credit in so far as that insurance is against the natural hazards arising out of the ownership of the property. He is not entitled to credit for any or all expenditures made for protection against the neglect or torts of himself and his representative.

Under the evidence our finding must be and is that the right to the credits has not been established. The premiums paid provide for protection of the fiduciary and of the estate, the one entitled, the other not entitled, to the protection at the expense of the estate. Proof in support of the payments made having failed, the exception is now sustained and the accountants will be surcharged in the aggregate of $31.50."

Exceptions by the accountant were filed on August 24, 1942. On December 1, 1942, exceptant petitioned for further audit, to the end that additional testimony might be submitted. All parties in interest agreed thereto and, the audit having been resumed, additional testimony was received and the transcript thereof was filed on January 20, 1943.

On the basis of that testimony and testimony previously received, exceptant undertook to show and did show, and we now so find, that the policies held were of a standard type; that no policies insuring the trust against any liability eventually falling upon the trust, to the exclusion of the personal liability of the trustee and limited to him, were known or obtainable. The officer of the insurer in charge of underwriting testified that the cost of a special contract insuring against the ultimate liability of the estate, or the liability of the estate for reimbursement, alone would far exceed the cost of the contract in question.

It is true, as argued in behalf of the life beneficiary, the exceptant, that suit for damages cannot be maintained, nor judgment recovered against the estate. The action for damages on torts must be against the fiduciary individually, not against the estate: Braman's Appeal, 89 Pa. 78; Slakoff v. Foulke, Trustee, 323 Pa. 352; Clauson v. Stull, Admx., 331 Pa. 101; Prager v. Gordon (No. 1), 78 Pa. Superior Ct. 76.

A. L. I. Restatement of Trusts, §264, states:

"The trustee is subject to personal liability to third persons for torts committed in the course of the ad-

ministration of the trust to the same extent that he would be liable if he held the property free of trust."

Comment (*a*) thereunder says:

"The rule stated in this Section is applicable whether the trustee committed the tort intentionally or negligently or without fault, whether his conduct consisted in action or failure to act, and whether or not he was violating his duties as trustee in acting or failing to act."

Comment (*b*) reads:

"Under the principle of respondeat superior, torts committed by the agents or servants of the trustee in the course of the administration of the trust subject the trustee to liability to the same extent as though he were not a trustee (see Restatement of Agency, §§212-267). The principle of respondeat superior is applicable although the trustee receives no benefit from the trust."

Comment (*a*) under section 247 says, inter alia:

"If the liability was incurred in the proper administration of the trust and the trustee was not personally at fault in incurring the liability, he is entitled to indemnity out of the trust estate. If he has discharged the liability out of his individual property, he is entitled to reimbursement out of the trust estate; if he has not discharged the liability, he is entitled to exoneration out of the trust estate, that is he can properly use trust property in discharging the liability."

Comment (*b*) adds:

"Where a tort to a third person results from the negligence of an agent or servant properly employed by the trustee in the administration of the trust, and the trustee is not personally at fault, although the trustee is liable to the third person, he is entitled to indemnity out of the trust estate."

Comment (*c*) says:

"Where the liability to the third person results from the act of the trustee, but the trustee is not at fault in

incurring the liability, he is entitled to indemnity out of the trust estate."

Comment (*d*):

"If the trustee was at fault in incurring the liability, he is not entitled to indemnity."

In Hodgson's Estate, 342 Pa. 250, 262, the Supreme Court cites with approval and follows comments (*a*) and (*d*) of section 247.

"Where the third person obtains a judgment against the trustee personally, but he was not personally at fault, if he pays the judgment with his own funds, he is entitled to reimbursement out of the trust estate; or, instead of paying the judgment with his own funds, he can properly pay it out of the funds of the estate": Scott on Trusts, §264..

In the adjudication of May 16, 1942, we cited the generally-accepted rule that "It is the duty of the trustee to use reasonable care to protect the trust property from loss or damage . . . to take reasonable steps to procure such insurance as is customarily taken by prudent men." (A. L. I. Restatement of Trusts, §176, comment (*b*); Scott on Trusts, §176.)

We quoted from Bogert on Trusts, §599:

". . . it is believed that ordinary business precaution demands other types of insurance in many cases. A trustee holding a large apartment house would seem to have a duty to take out employer's liability insurance. A trustee operating a store where valuable goods are kept in a comparatively exposed condition should insure against burglary. A trustee who has as a part of the trust estate a truck or automobile which he is using in the trust business, should protect the estate against liability for injuries to person or property in the operation of the motor vehicle. In deciding the question whether he has the duty of taking out any one of the numerous types of insurance now available, the trustee should study the conduct of ordinarily prudent business

men who own property of the type being considered, and should then follow that standard."

It becomes apparent that although the primary liability is that of the fiduciary and not of the estate, reimbursement out of the estate is permitted in the conditions cited. It is against this ultimate injury and depletion that the estate should be protected. Against that and against costs and the burden of defending a suit this policy indemnifies the estate. The cost of this protection is small and the precaution exercised by the fiduciary in procuring the protection was reasonable and proper. The insurance was taken in the performance of a duty to the trust, at a very modest cost to the estate. The mere fact that, incidentally to the protection of the estate, the fiduciary, too, is given protection, without additional cost, should not operate against the liability of the estate to pay.

A loss to the estate would naturally affect the income of the life beneficiary and the ultimate distribution to the remaindermen, just as would loss through fire, storm, or other usual hazards, or loss resulting from default of tax payments and failure of repairs. Liability for these rests on the life estate. To this category belong the payments for the protection accorded under these policies.

The exceptions are, accordingly, sustained, the credits taken are reinstated, and as so amended the adjudication is now confirmed absolutely.